**FILED**

Dec 26 2019, 7:40 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court



ATTORNEY FOR APPELLANT

Andrew Ault
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Thomas Meranda,

*Appellant-Petitioner,*

v.

Mary Elizabeth Spaw,

*Appellee-Respondent.*

December 26, 2019

Court of Appeals Case No.
19A-GU-1218

Appeal from the Boone Superior
Court

The Honorable Matthew C.
Kincaid, Judge

Trial Court Cause No.
06D01-1109-GU-38

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, Thomas Meranda (Meranda), appeals the trial court's Order denying his petition to terminate the guardianship of Gwendolyn M. Reagan (Reagan).

We reverse and remand.

# ISSUE

Meranda presents two issues on appeal, which we consolidate and restate as: Whether the trial court erred when it concluded that the issues raised in Meranda's petition had already been decided and are no longer available for review.

# FACTS AND PROCEDURAL HISTORY

Meranda is the spouse of the protected person, Reagan, who was born on March 26, 1940. They were married on November 25, 2000 and continue to be married to this date. As early as 2004, Reagan began suffering from symptoms which, in 2008, led to an Alzheimer's diagnosis. On December 13, 2011, the trial court appointed Leslie Rodeman (Rodeman), Reagan's brother, as the guardian of her person and estate. Rodeman filed a guardianship inventory on September 23, 2013. That same day, Rodeman also requested permission to repair Reagan's property, which was granted by the trial court. Rodeman resigned as guardian on September 16, 2014, at which time he also filed an amended inventory and guardian's current report and accounting. The amended inventory was not served on any individual, while the guardian's

report was only served on Reagan. The following day, September 17, 2014, the trial court approved the report and accounting without a notice or hearing.

[5] On September 17, 2014, Appellee-Respondent, Mary Elizabeth Spaw (Spaw), Reagan's daughter, was appointed as successor guardian.[1] On November 25, 2014, Spaw filed her verified guardian's second current report and accounting, with certificate of service to Reagan only. After the appointment of the new guardian, Reagan moved from her home in Lebanon to Spaw's home in Kendallville where she resided from November 2014 until March 2015. In March 2015, Reagan moved in with Meranda in his residence in Lebanon as he retired from his employment and was able to care for her on a daily basis. At that time, Reagan's monthly allowance was increased to allow for eating out and hairdresser appointments, while Meranda was reimbursed for medical expenses he paid on behalf of Reagan after providing the receipts to Spaw. On September 16, 2016, Spaw filed her verified guardian's second amended inventory, with notice to Reagan. Three days later, the trial court approved the filing without a notice or hearing.

[6] On June 8, 2017, Spaw filed a petition for authority to clean-up and sell Reagan's real estate that had been the subject of Rodeman's petition to repair. In her petition, Spaw noted that the property had been empty for years and had

---

[1] Spaw was initially appointed as co-guardian with Robert Lee Reagan, Spaw's brother. However, as he passed away at a certain point, Spaw continued as the sole guardian.

deteriorated as a result. The trial court granted the petition without notice, hearing, or service of the order.

[7] On June 21, 2018, Meranda filed a *pro se* letter with the trial court advising the court that because Spaw had not been paying Reagan's medical bills, he had been forced to pay them and was falling in debt. Meranda requested that Spaw find Reagan another place to live due to the possibility of Meranda's mortgage being foreclosed. A month later, on July 18, 2018, Spaw submitted a status report to the trial court, advising the court "that the medical bills are being paid by the Guardian herein." (Appellant's App. Vol. II, p. 82). No copy was served on Reagan or Meranda. Spaw also filed her third report and accounting, which was approved by the trial court without notice or hearing.

[8] On February 11, 2019, Meranda, represented by counsel, filed an emergency petition for termination of the guardianship and for succession of guardianship. In his petition, Meranda asserted that Spaw had mismanaged Reagan's estate and failed to provide for Reagan's physical and mental needs. In addition, he claimed to have incurred more than $40,000 of unreimbursed medical and personal expenses in his care for Reagan. On February 13, 2019, Spaw filed her response to Meranda's emergency petition contending that the accountings "were approved [by the court] and none of which were appealed by Meranda" and "no objections were raised at any time until the recent filing." (Appellant's App. Vol. II, p. 16).

[9] On March 14, 2019, the trial court conducted a hearing on Meranda's petition. During the hearing, Meranda attempted to testify about Spaw's perceived financial mismanagement of Reagan's estate. Spaw objected, citing relevancy concerns as the guardianship reports had been approved by the trial court and Meranda had failed to raise a timely objection. Although the objection was overruled the first time, it was sustained when Spaw objected to Meranda's continued testimony on the issue. A similar objection was sustained when Meranda attempted to admit into evidence documents reflecting unreimbursed medical expenses. On March 20, 2019, the trial court denied Meranda's emergency petition, concluding, in pertinent part:

> 2. The Guardian has taken measure[s] to secure appropriate care and living arrangements for [Reagan] consistent with applicable standards of caring for Alzheimer's patients with the aide of her physician[,] a medical doctor.
>
> 3. The Guardian has not interfered with [Meranda's] ability to see [Reagan].
>
> 4. The Petition is substantially a rehashing of issues previously decided.

(Appellant's App. Vol. II, p. 86).

[10] Meranda now appeals. Additional facts will be provided if necessary.

# DISCUSSION AND DECISION

[11] Meranda contends that the trial court erred when it refused to admit documents reflecting a purported mismanagement of the estate by Spaw and concluding that his petition amounted to nothing more than a repetition of issues that had been previously decided.

[12] Initially we note that Spaw did not file an appellee's brief. In such a situation, we do not undertake the burden of developing arguments for her. *See Hill v. Ramey*, 744 N.E.2d 509, 511 (Ind. Ct. App. 2001). Applying a less stringent standard of review with respect to showings of reversible error, we may reverse the trial court if the appellant can establish *prima facie* error. *See id*. *Prima facie*, in this regard, is defined as "at first sight, on first appearance, or on the face of it." *Id*. "When an appellant is unable to meet that burden, we will affirm." *Id*.

[13] Indiana law allows for the appointment of a guardian to act in the best interests of a person who is unable to care for herself or for her property. *See* Ind. Code § 29-3-8-2. In general, the guardian has power to conduct the protected person's affairs. I.C. § 29-3-8-2. On the other hand, Indiana Code section 29-3-12-4 also stipulates that a trial court may remove a guardian who has proved unsuitable of discharging her responsibilities or has failed to perform a duty imposed by law or court order. "The statute governing the proceedings for the removal of a guardian vests broad discretion in the trial court, and the appellate court will not interfere unless an abuse of discretion clearly appears." *Carr v. Carr*, 685 N.E.2d 92, 97 (Ind. Ct. App. 1997).

[14]    Meranda's main argument focuses on the trial court's refusal to admit evidence of Spaw's financial mismanagement of Reagan's estate and the unreimbursed medical expenses incurred in his care for Reagan. The trial court denied their admission because the issues had been "previously decided" and the trial court was "not going to revisit any of those." (Appellant's App. Vol. II, p. 86; Transcript p. 26). He now contends that because the trial court's orders, accepting Spaw's accountings and inventory, were decided *ex parte*, the issues are not definitely concluded and can still be challenged in the current proceedings.

[15]    When accounting for the administration of a guardianship, the guardian shall, unless otherwise directed by the court, file a written verified account of the guardian's administration in accordance with a statutorily determined timeline. *See* I.C. § 29-3-9-6(a). Upon the filing of a verified account, the trial court "shall conduct a hearing." I.C. § 29-3-9-6(d). However, prior to conducting the hearing, the trial court "shall give notice to each person entitled to receive notice that an accounting has been filed and will be acted upon by the court on the date set unless written objections are presented to the court on or before that date." I.C. § 29-3-9-6(d). The person entitled to receive notice is the protected person, unless waived by the trial court in which instance, the protected person's spouse is entitled to receive notice of the hearing. *See* I.C. § 29-3-9-6(d)(1)(A). Nevertheless, when an account, other than an account in final settlement is filed, the trial court may approve the same *ex parte*, but the account may be reviewed by the court at any subsequent time and does not become final

until an account in final settlement is approved by the court after notice and hearing. I.C. § 29-3-9-6(f). "When notice of hearing has been given under this section, the order of the court approving the intermediate account or the final account is binding upon all persons." I.C. § 29-3-9-6(g).

[16] Here, Spaw's accounts of administration and inventories were not filed as part of a final settlement and discharge, but amounted to intermittent financial reports of the guardianship. The record is silent as to any evidence that the trial court notified Reagan, or in case of waiver, Meranda, of the filing and the subsequent court hearing. As no notice was given—and according to the record, no hearings were held—the trial court's orders were issued *ex parte*. While an *ex parte* order is permitted, it is not binding on Meranda and can still be challenged and reviewed "at any subsequent time." *See* I.C. § 29-3-9-6(f).

[17] "Any person having a claim against the protected person or the protected person's property or against the guardian as such may file the claim with the court at any time before the claim is barred by the statute of limitations and, upon proof of the claim, procure an order for its allowance and payment from the guardianship property." I.C. § 29-3-10-1(d). The statute does not require, nor have we found any authority, statutory or otherwise, that provides that a claim must be filed on the interim accounting that covers the period in which the claim arose. *See Schwartz v. Schwartz*, 773 N.E.2d 348, 354 (Ind. Ct. App. 2002). As such, Meranda's claims for financial mismanagement and reimbursement of medical expenses are not time barred.

Accordingly, because the trial court issued *ex parte* orders on Spaw's interim accountings, Meranda may still challenge these findings. While we acknowledge the discretionary power of the trial court of its subsequent review of the *ex parte* orders, here, the trial court erred by declaring the *ex parte* orders to have been conclusively decided and by denying admission of evidence purporting to establish financial mismanagement of Reagan's estate and unreimbursed medical invoices. We reverse the trial court's Order denying Meranda's petition and remand for a new hearing.[2]

## CONCLUSION

Based on the foregoing, we hold that the trial court erred by concluding that the issues raised in Meranda's petition were no longer available for review.

Reversed and remanded for a new hearing.

Baker, J. and Brown, J. concur

---

[2] Because we reverse the trial court's Order, we also reverse the trial court's grant of attorney fees based on a frivolous claim.